UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROSE M. KNOX,

       Plaintiff,

v.                                                                      18-CV-541
                                                                        DECISION & ORDER
COMMISIONER OF SOCIAL SECURITY,

       Defendant.
_____

On May 13, 2019, the plaintiff, Rose M. Knox, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 31, 2019, Knox moved for judgment on the pleadings, Docket Item 16; on September 24, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 23; and on October 15, 2019, Knox replied, Docket Item 25.

For the reasons that follow, this Court grants Knox's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On July 29, 2014, Knox applied for Supplemental Security Income. Docket Item 8 at 229-34. She claimed that she had been disabled since October 1, 2009, due to depression, dysthymia, posttraumatic stress disorder ("PTSD"), anxiety, asthma,

pituitary adenoma, chronic back and leg pain, social anxiety, and panic attacks. *Id.* at 225, 245.

On December 11, 2014, the Commissioner denied Knox's application because she was not disabled under the Act. *Id.* at 165-70. Knox requested a hearing before an administrative law judge ("ALJ"), *id.* at 171-73, which was held on February 16, 2017, *id.* at 111-45. The ALJ then issued a decision on March 22, 2017, confirming the finding that Knox was not disabled. *Id.* at 14-24. Knox appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5-7.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Knox's claim. Knox was examined by several different providers, but the opinions of Arvind Samant, M.D.; Cynthia McPhaden, L.M.H.C.; John Schwab, D.O.; Gregory Fabiano, Ph.D.; and C. Butensky are of most significance to the claim of disability here.

### A. Niagara County Mental Health: Arvind Samant, M.D., and Cynthia McPhaden, L.M.H.C.

In 2006, Knox spent five days in Niagara Falls Memorial Hospital with "depression and suicidal thoughts." *Id.* at 412, 416. Over the next decade, she continued to receive treatment from mental health professionals at the Niagara County Department of Mental Health, including Dr. Samant, a psychiatrist, and Ms. McPhaden, a licensed therapist. *Id.* at 416.

As of at least April 10, 2014, and through at least December 29, 2016, Knox received psychiatric care from Dr. Samant once every three months. Dr. Samant diagnosed dysthymia and PTSD and prescribed various antidepressants throughout the

2

course of treatment.  *Id.* at 335, 366, 458-59, 495-96, 513, 543, 561-62, 585-86, 608, 631.  On ten separate occasions, Dr. Samant reported that Knox denied delusions, hallucinations, mood swings, racing thoughts or suicidal ideations; was alert and oriented; had intact cognitive functioning and memory; and had fair insight and judgment.  *Id.* at 335, 365, 458, 542, 561, 585, 607, 630; *but see id.* at 513 (Knox admitting to "racing thoughts and mind wandering" in February and May 2016 but reporting no other symptoms).

In February 2014, Knox began care with Ms. McPhaden.  *See id.* at 300-10.  Knox reported suicidal ideation in the prior month.  *Id.* at 307-08.  Ms. McPhaden provided psychotherapy weekly from March 2014 through September 2014, and then every other week from October 2014 through January 2017.  *See id.* at 300-82, 452-88, 489-646.  The primary goal of the psychotherapy was to address Knox's "self isolat[ion]" and "difficulties engaging in relationships."  *See, e.g.*, *id.* at 326, 464; *see also id.* at 312, 480, and 490 (Ms. McPhaden opining that Knox was severely impaired in the areas of "initiating relationships," "assertiveness," and forming friendships).  Ms. McPhaden did not identify any suicide risk during these psychotherapy sessions, *see id.* at 328, 331, 334, 339, 343, 346, 351, 357, 361, 364, 369, 372, 375, 379, 382, 500, 539, 553, 574, 591, 611, 640, 644, but she did identify a moderate risk of self-harm in January and March 2015, and again between September 2016 and January 2017, *see id.* at 454, 465, 468, 471, 474, 477, 605, 625.

**B.     John Schwab, D.O.**

On November 11, 2014, Dr. Schwab, an internist, completed a consultative internal medicine examination of Knox.  *See id.* at 412-15.  Dr. Schwab noted Knox's

3

history of dysthymia and diagnosed low back pain, asthma, hypothyroidism, pituitary adenoma, PTSD, anxiety, panic attacks, carpal tunnel syndrome of the right hand, and tobacco and substance abuse. *Id.* at 415. He opined that Knox was "mild[ly] restrict[ed] in bending, lifting, and carrying [objects]." *Id.* at 415.

### C. Gregory Fabiano, Ph.D.

On November 11, 2014, Dr. Fabiano, a psychologist, completed a consultative psychological examination of Knox. *Id.* at 416-20. Dr. Fabiano diagnosed major depressive disorder (recurrent episodes), panic disorder, and possible PTSD, and he recommended that Knox continue with her ongoing psychological and psychiatric treatment. *Id.* at 420. He opined that Knox had no limitations in the areas of following and understanding simple directions and instructions, performing both simple and complex tasks independently, maintaining a regular schedule, learning new tasks, and making appropriate decisions; but he found that she had "mild to moderate" limitations in maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress. *Id.* at 419. Although these limitations "appear[ed] consistent with psychiatric problems," Dr. Fabiano found that those problems were not "significant enough to interfere with [Knox's] ability to function on a daily basis." *Id.*

### D. C. Butensky

On December 10, 2014, C. Butensky, a state medical examiner whose qualifications are not included in the record, reviewed Knox's records and completed a disability determination for the Social Security Administration. *See id.* at 152-64. C. Butensky opined that Knox was not limited in the areas of understanding and memory;

4

but was moderately limited in sustaining attention and concentration, interacting with others, and adapting or managing herself. *Id.* at 160-61.

## III. THE ALJ'S DECISION

In denying Knox's application, the ALJ evaluated Knox's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R § 416.920(a)(2). At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful employment. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 416.920(a)(4)(i). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 416.920(a)(4)(iv); 416.920(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* § 416.945

5

After determining the claimant's RFC, the ALJ completes step four. § 416.920(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 416.920(f). But if the claimant cannot, the ALJ proceeds to step five. §§ 416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 416.920(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ found at step one that Knox had not engaged in substantial gainful activity since the date she filed her application for disability benefits. Docket Item 8 at 16. At step two, the ALJ found that Knox had "the following severe impairments: PTSD, dysthymia, and sciatica." *Id.* The ALJ found that Knox's anxiety was not a medically determinable impairment and that her pituitary adenoma and asthma, though sufficiently limiting to qualify as medical impairments, were nonetheless "non-severe." *Id.*

At step three, the ALJ determined that Knox did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 17. More specifically, the ALJ found that Knox's sciatica did not meet Listing 1.04 (disorders of the spine). The ALJ also found that Knox's mental impairments did not meet Listing

6

12.04 (depressive, bipolar, and related disorders) or Listing 12.15 (trauma- and stressor-related disorders) because Knox did not have at least two marked limitations or one extreme limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. *Id.* at 17-18.

The ALJ then found that Knox had the following RFC:

> [Knox can] perform light work[1] . . . except she can only occasionally interact with supervisors, rarely (meaning less than occasionally but not never) with coworkers, and never with the public and is limited to unskilled (simple, routine tasks not at a production rate pace) and simple work-related decisions when dealing with change in the work setting.

*Id.* at 18. The ALJ explained that although "[Knox]'s medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,] . . . [Knox]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 19. In reaching this determination, the ALJ accorded "great weight" to the opinion of the consulting physician, Dr. Schwab; "partial weight" to the opinion of the consulting psychologist, Dr. Fabiano; and "some weight" to the opinion of the non-examining consultant, C. Butensky. *Id.* at 21-22.

At step four, the ALJ found that Knox had no past relevant work. *Id.* at 22. And at step five, the ALJ found that "[c]onsidering [Knox's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

7

economy that [Knox] could perform." *Id.* at 23. Specifically, the ALJ credited the testimony of a vocational expert that Knox could find work as a garment folder, garnisher, or warehouse support worker. *Id.*

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

**I.     ALLEGATIONS**

Knox argues that the ALJ erred in three ways in determining her mental RFC. Docket Item 16-1 at 12-21.  First, Knox argues that the ALJ did not fulfill her affirmative obligation to fill a gap in the administrative record.  *Id.* at 21.  Second, she argues that the ALJ's mental RFC determination is internally inconsistent.  *Id.* at 12-16.  Finally, she argues that the ALJ improperly substituted her own lay judgment for that of medical professionals.  *Id.* at 16-21.  Knox argues that in light of these errors, the ALJ's finding is not supported by substantial evidence and thus warrants remand for proper consideration of her mental RFC.  *Id.* at 12-21.  The Court agrees with the first argument and accordingly remands the matter to the Commissioner for further record development and reconsideration of Knox's mental RFC in light of the expanded record.

**II.    ANALYSIS**

   **A.    Duty to Develop the Record**

Knox argues that the ALJ erred procedurally in determining her mental RFC without first filling material gaps in the record.  Docket Item 16-1 at 21.  This Court agrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the

individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)). The Social Security Administration's own regulations reflect this duty, stating that "[b]efore [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical sources when [she] give[s] [the Commissioner] permission to request the reports." 20 C.F.R. § 404.1512(d)(1).

The regulations further explain that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating physician] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[2]) (additional citation omitted). That is so because the opinions of

---

[2] This section was amended, effective on March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Knox applied for disability benefits on July 29, 2014—

10

treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"—are entitled to controlling weight so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record."[3]  *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2) (2015); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order).

The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 Fed. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is

---

that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

[3] Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless she first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

11

appropriate where the records are not otherwise complete. *See Tankisi*, 521 Fed. App'x at 34. That is the case here.

In determining that Knox had the mental RFC to "occasionally interact with supervisors, rarely (meaning less than occasionally but not never) with coworkers, and never with the public," Docket Item 8 at 18, the ALJ accorded "partial weight" to the opinion of the consulting psychologist, Dr. Fabiano, that Knox had mild to moderate limitations in maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress. *Id.* at 419. But the ALJ did not rely upon the opinion of Dr. Samant, Knox's treating psychiatrist. *See id.* at 17-22 (citing specific clinical data points reported by Dr. Samant but never citing any opinion evidence). She only once cites an opinion offered by Ms. McPhaden, Knox's treating psychotherapist, and then only to give "some weight" to Ms. McPhaden's rating of Knox on the Global Assessment of Functioning scale. *See id.* at 22 (citing *id.* at 374, 451, 552). In that regard, the ALJ asserted that although Ms. McPhaden's rating "indicat[ed] that [Knox's] mental conditions cause[d] moderate symptoms and impairment in functioning," it "lacked longitudinal probative value" because it was only "a snapshot of functioning at the time of the examination." *Id.* at 22.

The ALJ's mental RFC determination was erroneous in a number of respects. First, the ALJ's analysis violated the Commissioner's own regulations, which "impose on the ALJ a duty to solicit" a medical source statement from a claimant's treating physician. *See Tankisi*, 521 Fed. App'x at 33 (citing former 20 C.F.R. § 416.913(b)(6)). The ALJ thus should have requested a medical source statement from Dr. Samant and,

12

possibly, Ms. McPhaden[4]. And because the ALJ's determination that Knox could "occasionally interact with supervisors, rarely (meaning less than occasionally but not never) with coworkers, and never with the public," Docket Item 8 at 18, likely constituted an implicit rejection of Ms. McPhaden's opinion that Knox was severely limited in the areas of "initiating relationships," "assertiveness," and forming friendships, *see, e.g.*, *id.* at 312, this Court finds no assurance that the ALJ's error was harmless.

What is more, it was illogical for the ALJ to discount Ms. McPhaden's opinion as a "snapshot" while also finding the opinions of Dr. Fabiano, who examined Knox only once, and C. Butensky, who never examined her, at least somewhat probative of Knox's mental functioning. That is particularly so here given that Ms. McPhaden's "snapshot" was consistent over the course of three years[5] and corroborated by Dr. Samant[6]. Indeed, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is even

---

[4] Although therapists are "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions cannot not "establish the existence of a medically determinable impairment," an opinion from such a source "may outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). Because Ms. McPhaden treated Knox weekly-to-biweekly for nearly two years, an ALJ could reasonably find that her opinion deserves significant weight.

[5] *See id.* at 302, 325, 328, 341, 359, 361, 367, 374, 377, 380, 452-508, 518, 522, 526, 531, 536, 548, 552, 555, 566, 571, 575, 580, 589, 593, 599, 604, 608, 609, 614, 617, 620, 623, 627, 634, 638, 642, (Ms. McPhaden rating Knox's GAF at 57 after every psychotherapy session from February 2014 to January 2016 but providing no GAF beginning in April 2016).

[6] *See id.* at 336, 366, 452-508, 513, 543, 562, 586, 631 (Dr. Samant rating Knox's GAF at 57 after every evaluation from April 2014 through February 2016 but providing no GAF beginning in April 2016).

13

more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (first quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam)); *see also id.* at 97 (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).

In short, because there was an "obvious gap[ ] in the administrative record" as it related to Knox's mental functioning, the ALJ was obligated make a reasonable effort to fill that gap before rejecting Knox's application for disability benefits—specifically, by requesting a medical source statement from Knox's treating psychiatrist. *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)). Because she did not do so, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Knox's application in light of the expanded record.

In light of this result, the Court will not reach the remaining arguments raised by Knox. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by [the claimant] because they may be affected by the ALJ's treatment of this case on remand."); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the

ALJ should consider both Knox's limitations in the specific functional domains as well as the impact of Knox's response to stress on her ability to work. *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)) ("Because stress is 'highly individualized,'" the ALJ must "make specific findings about the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."). She also should ensure that any specific RFC limitations, such as the amount of time that Knox can interact with supervisors, coworkers, and the public, are based on specific medical evidence in the record, not her "own surmise." *See Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 23, is DENIED, and Knox's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 9, 2019
           Buffalo, New York

                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE